An Interlocutory Opinion and Award was filed by Deputy Commissioner Chapman on 11 April 1995, in which defendant-employer Roy Huffman Construction Company and its carrier Liberty Mutual Insurance Company were dismissed as party defendants. Deputy Commissioner Chapman's final Opinion and Award was then filed on 8 April 1996, and the remaining Non-Insured defendant, Tri-State Services, Inc., and plaintiff each filed appeals to the Full Commission. Subsequently, the appeal of defendant Tri-State Services, Inc., was withdrawn by Order filed 24 June 1996.
***********
The Full Commission reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the prior Opinion and Award. The Full Commission, however, has modified the Deputy Commissioner's Opinion and Award and incorporated, for clarity, portions of the 11 April 1995 Interlocutory Opinion and Award. The remaining Portions of the 11 April 1995 Opinion, which are not directly covered in the Full Commission's Opinion and Award, are nonetheless, incorporated as if fully set out herein.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 17 August 1994 as:
STIPULATIONS
1. On 28 June 1990, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Liberty Mutual Insurance Company, now dismissed, was the carrier on the risk for defendant-employer Roy Huffman Construction Company, now dismissed, at relevant times herein.
3. At the relevant times herein, defendant-employer Tri-State Services, Inc. was non-insured.
4. On 28 June 1990, plaintiff sustained an injury by accident arising out of and in the course of his employment.
Additionally, the parties stipulated into evidence the following documents:
 a. Three pages of documents, including an agreement of 29 May 1990, a statement and 1099s;
 b. Thirty-five pages of miscellaneous documents, including checks, Industrial Commission Forms and a transcript of a recorded statement, and;
c. Six pages of copied checks.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. In June of 1990, plaintiff was self-employed, working as an independent contractor installing vinyl siding. Although plaintiff testified that he earned approximately $1,000.00 per week, he indicated in a recorded statement that he did not clear $700.00 from the job in question, after working for one and one-half weeks. The Form 18 filed on his behalf, indicates an average weekly wage of $500.00 to $600.00. The 1099s submitted into the record do not support plaintiff's estimate of wages, particularly because plaintiff paid others who helped him. One company for which plaintiff did considerable work for did not provide him with a 1099. Therefore, the Full Commission finds that plaintiff's average weekly wage on 18 June 1990 was $500.00.
2. Defendant-employer, Tri-State Services, Inc., was in the business of selling vinyl siding. As part of the contract for sale, Tri-State would agree to provide installation of the siding. As part of the contract for sale, Tri-State would agree to provide installation of the siding. However, because it had no employees to do this work, Tri-State subcontracted the work to various independent contractors. There were no written contracts with the independent contractors.
3. In June of 1990, Tri-State offered a job to plaintiff who accepted the offer. The work involved the installation of siding at a residence.
4. Prior to this job being offered to plaintiff, Mr. Sherman Messer, of Tri-State, had arranged for Roy Huffman Construction Company (Huffman) to do the installation. When Huffman later was unable to perform the work, Tri-State and Huffman mutually agreed that Tri-State could secure another subcontractor. It was for this reason that plaintiff was hired.
5. On 28 June 1990, while working at the homeowners' residence, plaintiff sustained an injury by accident arising out of and in the course of his employment when he fell from a ladder. As the result of this injury by accident, plaintiff sustained a fracture dislocation of the talus bone in his left ankle. Dr. David G. Dye examined plaintiff at the emergency room and recommended surgery to repair the fracture. Plaintiff was then admitted to the hospital and underwent surgery for a closed reduction of the fracture and fixation with screws in his ankle.
6. Following surgery, plaintiff continued to experience problems with his left foot and ankle due to the fact that the fracture had not properly healed. With the type of fracture plaintiff sustained, it is common for the blood supply to the area of bone affected to be interrupted and for the bone to, in effect, die. This occurred with plaintiff's ankle and he consequently developed avascular neurosis of the talus bone. Dr. Dye indicated that further surgery was an option, but plaintiff elected to pursue conservative treatment with physical therapy.
7. Over the course of the next nine months, plaintiff developed a deformity in his left foot, the motion in his left ankle was very limited and he experienced difficulty placing weight on it. Plaintiff then went to Dr. Vincent E. Paul, who recommended surgery and referred him to Dr. Laurence E. Dahners in Chapel Hill for the procedure.
8. Dr. Dahners examined plaintiff on 22 July 1991, and ordered a CT scan which revealed a non-union of the left talus bone with degenerative changes in the sutalar joint. Plaintiff underwent surgery on 8 November 1991, which involved the fusing of the joint using a metal rod. Because plaintiff's left leg would now be shorter, Dr. Dahners fused his ankle in position such that plaintiff's toes were lower than his heel with the expectation that plaintiff would use a heel lift and that this would be reasonably comfortable.
9. Plaintiff remained in a cast until 9 April 1992, but developed pain and swelling after its removal. Consequently, plaintiff's left foot and ankle were again placed in a cast on 20 April 1991 and remained in a cast until 11 May 1992 when he was provided with a brace to wear. By the end of June 1992, plaintiff was able to walk in cowboy boots and was reporting no significant problems. On 1 September 1992, his fusion was solid and Dr. Dahners released plaintiff from his care. Plaintiff did not return to the doctor until 7 September 1993, when he reported renewed pain. Dr. Dahners indicated that the position of plaintiff's foot and ankle could be changed with additional surgery. Plaintiff elected to undergo the procedure, which was performed on 13 September 1993. As part of the procedure, Dr. Dahners removed the metal rod and changed the angle of plaintiff's foot so that his toes would be level.
10. Following this latest surgery, plaintiff experienced some problems in bearing direct weight on his left foot, which was against Dr. Dahner's instructions. Plaintiff then began complying with these instructions and the bones in his left foot and ankle healed. On 1 July 1994, Dr. Dahners released plaintiff from his care.
11. Plaintiff reached maximum medical improvement from his injuries and resulting surgeries on 1 July 1994, and has sustained a sixty percent (60%) permanent partial disability to his left foot and ankle.
12. Prior to plaintiff entering into the contractual relationship at issue, Tri-State had entered a written contract for the work with the homeowners. Tri-State was, therefore, the principal contractor with respect to the performance of that work. Pursuant to the contractual relationship between Tri-State and plaintiff, Tri-State advanced the sum of $300.00 to plaintiff on 19 June 1990, and later paid the balance of $2,008.75 for the work performed. Plaintiff's crew completed the job following his injury.
13. There was no agreement or contract between Huffman and plaintiff at any time relevant herein. Plaintiff learned of the prior agreement between Tri-State and Huffman when he called Mr. Messer to ask about insurance coverage, and was told to call Roy Huffman to see if his company could pay the premiums to obtain coverage under its insurance.
14. Although plaintiff signed an agreement required by Tri-State which indicated plaintiff would be responsible for carrying his own workers' compensation insurance, Tri-State never asked for or received a certificate showing that plaintiff had complied with G.S. § 97-93, either by obtaining insurance or by qualifying as a self-insured employer.
15. As the result of his 28 June 1990 injury by accident, plaintiff was unable to earn the amount of wages he earned prior to his injury from 29 June 1990 through 20 March 1994. From 28 June 1990 through the present, Tri-State offered no suitable light duty work to plaintiff.
16. For a two week period in 1991, plaintiff performed some work for a company called AIC. During this period, plaintiff's duties increased the pain he was experiencing in his left foot and ankle and he, therefore, was unable to continue in that position.
17. Plaintiff continued to work as a musician during the period of his disability, as he had done so as a second job prior to his work-related injury. The earnings from plaintiff's work as a musician were not included in the computation of his average weekly wage. Further, there was no evidence offered which indicated that plaintiff's earnings as a musician increased after his 28 June 1990 injury.
18. Plaintiff reached maximum medical improvement from his injuries and resulting surgeries on 1 July 1994, and has sustained a sixty percent (60%) permanent partial disability to his left foot and ankle.
19. On 21 March 1994, plaintiff began working for another company earning wages greater than which he earned on 28 June 1990, and has continued to earn such wages through the present.
**********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 28 June 1990, plaintiff's average weekly wage was $500.00, yielding a compensation rate of $333.34 per week. G.S. § 97-2 (5).
2. On 28 June 1990, plaintiff was working as a subcontractor for defendant-employer Tri-State Service, Inc., and was not a subcontractor for defendant-employer Roy Huffman Construction Company. G.S. § 97-19.
3. On 28 June 1990, plaintiff sustained an injury by accident arising out of and in the course of his employment as a subcontractor for Tri-State Services, Inc. G.S. § 97-6 (2).
4. As a result of his injury by accident, plaintiff is entitled to be paid by defendant Tri-State Services, Inc. temporary total disability compensation at the rate of $333.34 per week for the period 29 June 1990 through 20 March 1994, excluding the two weeks plaintiff worked for the company AIC in 1991. G.S. § 97-29.
5. As the result of his injury by accident, plaintiff is entitled to be paid by defendant Tri-State Services, Inc. temporary partial disability compensation at the rate of two-thirds the difference between his average weekly wage on 28 June 1990 and the amount of wages he was able to earn during the two week period in 1991 in which plaintiff worked for the company AIC. G.S. § 97-30.
6. As the result of his injury by accident, plaintiff is entitled to be paid by defendant Tri-State Services, Inc. compensation at the rate of $333.34 per week for 86.4 weeks, beginning on 20 March 1994, for the sixty-percent permanent partial disability he sustained to his left foot and ankle. G.S. § 97-31 (14).
7. Plaintiff is entitled to have defendant Tri-State Services, Inc. pay for all reasonable medical expenses incurred as the result of his injury by accident and related surgical procedures. G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant Tri-State Services, Inc. shall pay temporary total disability compensation to plaintiff at the rate of $333.34 per week for the period of 29 June 1990 through 20 March 1994, except for the two weeks plaintiff worked for the company AIC in 1991. This compensation is subject to the attorney's fee approved herein having accrued shall be paid to plaintiff in a lump sum.
2. Defendant Tri-State Services, Inc. shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds the difference between his average weekly wage on 28 June 1990 and the amount of wages he was able to earn during the two week period in 1991 in which plaintiff worked for the company AIC. This compensation is subject to the attorney's fee approved herein and having accrued shall be paid to plaintiff in a lump sum.
3. Defendant Tri-State Services, Inc. shall pay to plaintiff compensation at the rate of $333.34 per week for 86.4 weeks, beginning on 20 March 1994, for the sixty-percent permanent partial disability he sustained to his left foot and ankle. This compensation is subject to the attorney's fee approved herein and having accrued shall be paid to plaintiff in a lump sum.
4. Defendant Tri-State Services, Inc. shall pay for all reasonable medical expenses incurred as the result of plaintiff's injury by accident and related surgical procedures.
5. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded above is approved for counsel for plaintiff. Said fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff.
6. Defendant Tri-State Services, Inc. shall pay the costs.
***********
ORDER
This matter is hereby REMANDED to a Deputy Commissioner for a hearing in due course on the issues of whether defendant has been, or is in compliance with the Act and whether a penalty pursuant to G.S. § 97-94 should be assessed. The Industrial Commission shall notify the office of the Attorney General of North Carolina to pursue this matter.
 S/ _____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER